[Civ. No. 21029. Second Dist., Div. Two. Jan. 10, 1956.]

MARK H. EDWARDS et al., Appellants, v. CITY OF SANTA PAULA et al., Respondents.

Mark H. Edwards, in pro. per., and Donald D. Roff for Appellants.

Edmund G. Brown, Attorney General, James E. Sabine, E. G. Benard and Irving H. Perluss, Assistant Attorneys General, Edward P. Hollingshead, Deputy Attorney General, Hal V. Hammons, Jr., and Robert R. Willard for Respondents.

ASHBURN, J.—Plaintiff Mark H. Edwards sued the city of Santa Paula and others to quiet title to certain property situated in that municipality. The city defended and cross-complained in reliance upon a tax deed from the state to the city. Defendant prevailed and Edwards appeals. Counsel present two primary questions for determination.

(1) is plaintiff's attack upon the tax deed barred by limitation, and (2) is the property description in the deed fatally defective.

A considerable portion of the trial was devoted to the question of whether plaintiff was an owner in possession and hence not subject to the bar of the statute (Rev. & Tax Code, §§ 175, 3521, 3522, 3725, 3809, 3810) within the doctrine that limitation does not run against an owner in possession, a rule often erroneously attributed to *Tannhauser* v. *Adams*, 31 Cal.2d 169 [187 P.2d 716, 5 A.L.R.2d 1015]. (See *McKenna* v. *Ping*, 105 Cal.App.2d 752, 755 [234 P.2d 246].) Any misunderstanding of that case has been dissipated by the recent decision in *Sears* v. *County of Calaveras*. 45 Cal.2d 518 [289 P.2d 425]. That action was an attack upon a tax deed issued to the state. It was alleged and admitted that plaintiffs were in exclusive and undisputed possession of the property during all times involved in the action. Plaintiffs relied on that fact to avoid the bar of sections 175 and 3521 of the Revenue and Taxation Code which otherwise would be applicable. Reliance was placed on *Tannhauser* v. *Adams, supra*, and *McCaslin* v. *Hamblen*. 37 Cal.2d 196 [231 P.2d 1]. The court said, at page 549 · ''There appears to be no reason why an owner of land, although in exclusive and undisputed possession, should not be required to be alert to protect his rights as against his own delinquency in the payment of taxes. He is charged with notice that if he claims the invalidity of a tax deed to the state or of the proceedings leading up to it he must bring his action for that purpose within the statutory time. . .

It is contended by the plaintiffs that this court, at least by implication, has ruled otherwise or recognized a contrary rule in *Tannhauser* v. *Adams, supra*, 31 Cal.2d 169. . . . It is not claimed that this court or any court of this state has directly and finally decided that sections 175 and 3521 of the Revenue and Taxation Code do not apply to an owner in possession. Nor is it contended that any case decided in this state directly involved the point. But it is contended that by indirection the courts of the state have approved the rule contended for by the plaintiffs. It is true as stated by them that what was said in the cases in this state on the subject was obiter. . . . Such an expression is not to be taken as the announcement of a rule that an owner in possession of real property is not bound by a valid statute of limitations with reference to tax-delinquent proceedings, the same as an

owner not in possession. . . . It is concluded that the plaintiffs are barred by statute from attacking the tax deed and all proceedings prior to its issuance and recordation."

 The deed from the state to the city of Santa Paula was made on May 29, 1941, and the action filed on March 3, 1953. The code sections cited, *supra*, prescribe a one-year limitation, and this action is barred[1] unless the description of the property found in the state's deed is fatally defective. If it is in that state the statute does not constitute a bar. It was so held in *Alma Inv. Co.* v. *Krausse*, 117 Cal.App.2d 740, 748 [256 P.2d 1017], and *Estribou* v. *Alma Inv. Co.*, 126 Cal.App.2d 61, 63-65 [271 P.2d 176]. As both parties deraign title from a common source, Sarah F. Taylor, and plaintiff has traced that title into himself, he must prevail unless the defendant city's tax title is good; if its deed is nugatory it becomes unnecessary to examine any of the proceedings culminating in the deed in favor of the state.

The pleadings describe the subject property as follows: "All that real property in the City of Santa Paula, County of Ventura, State of California, described as Lots 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30 and 31 of Block 68 Subdivision as per licensed Surveyor's record, Book 4, page 8, Records of Surveys, in the office of the County Recorder of Ventura County, California." The deed from state to city contains this description: "Lots 14 and 16, in Block 68-C, and Lots 20 and 22 to 31 inclusive, Block 68, as shown upon a Map recorded in the office of said County Recorder in Book 1 of Miscellaneous Records, Page 234-5, being a portion of Lot 14, Block 68, City of Santa Paula, Map No. 20." The recorded map reference is concededly erroneous: the one appearing in Book 1 of Miscellaneous Records, pages 234-235, has no Block 68 on it. Respondent would reject the false reference, thus reducing the description of the lots involved in this action to this: "Lots 20 and 22 to 31 inclusive, Block 68, as shown upon a Map . . . being a portion of Lot 14, Block 68, City of Santa Paula, Map No. 20." Map No. 20 is thereby left unidentified so far as any recording or filing reference is concerned, and lots 20 and 22 to 31, inclusive, are designated as "being a portion of Lot 14, Block 68, City of Santa Paula, Map No. 20." Three maps were introduced in evidence which are labelled on their face, "Santa Paula No. 20," and also designated as "Official map

---

[1]Assuming that reliance upon section 3810 Revenue and Taxation Code was properly brought to the attention of the trial judge. See *Union Sugar Co.* v. *Hollister Estate Co.*, 3 Cal.2d 740, 745 [47 P.2d 273].

of the City of Santa Paula, Ventura County, California.''
They are Exhibits E, F and L. It was stipulated that two of
those maps are identical (Exhibits E and L), Exhibit E being
the county assessor's map recorded in Book 1 of Assessment
Maps, and Exhibit L being filed in the office of the assessor of
the city of Santa Paula; Exhibit F is on file in the county
assessor's office.[2] Exhibit E and L on the one hand differs
substantially from Exhibit F, and both are at variance with the
licensed surveyor's map (Exhibit C) recorded in book 4, page
8. Records of Surveys, in the county recorder's office, the one
mentioned in the concededly correct description of the plead-
ings. In discussing the effect of this factual situation certain
settled principles should be kept in mind.

█ To be sufficient the description must be such that the
land can be identified or located on the ground by use of the
same (*Best* v. *Wohlford*, 144 Cal. 733, 736 [78 P. 293])

█ Parol evidence is always admissible in aid of application
of the description to its subject matter, but not for the pur-
pose of completing a description which is inherently not sus-
ceptible of application to the ground. The distinction is illus-
trated in *Best* v. *Wohlford, supra*, at page 737: ''Parol evi-
dence will not be admitted to help out a defective description,
or to show the intention with which it was made, or to resolve
an ambiguity in its terms; but the rule that the description
must be certain and definite and sufficient in itself to identify
the land, does not exclude evidence for the purpose of apply-
ing the description to the surface of the earth, and thus iden-
tifying it with the tract in controversy. If a monument is
given as the starting-point, evidence may be given to show its
location, but if the direction of the course from that monu-
ment is not given, evidence will not be received to show what
direction was intended. If the land is described by some
name or designation, evidence will be received for the purpose
of showing that the tract in controversy was well and gener-
ally known by that name or designation.'' █ There are
no presumptions or intendments in favor of the description
of a tax deed. (*Sinai* v. *Mull*, 80 Cal.App.2d 277, 280 [181
P.2d 924]; *Harvey* v. *Meyer*, 117 Cal. 60, 64 [48 P. 1014].)
█ The intention of the assessor or grantor (state) is not
a proper subject of inquiry for the proceeding is *in invitum*,
the property owner has no intention which enters into the

<hr>

[2]The briefs say that Exhibits F and L are identical rather than E
and L, but the reporter's transcript and the clerk's labeling of exhibits
does not confirm this. As a matter of convenience a single map was
given the designation of Exhibit E and L.

deed, he may stand upon its insufficiency, and the taxing agency or the state must adhere to settled basic rules in describing the property or the deed will be void. (*Stewart* v. *Atkinson*, 96 Cal.App. 50, 55 [273 P. 606].) ▮ *Miller* v. *Williams*, 135 Cal. 183, 185 [67 P. 788]: ''A description which would suffice in an agreement to convey, or in a deed, may be bad in an assessment. In the first case, the court might inquire as to the intention of the parties, but in the other the owner has no part in the proceeding, which is hostile, and to every step in which he is objecting. The assessment is made with a view to a possible sale, and the property should therefore be so described as to enable the owner to know what land is charged with the tax, and also to enable a possible purchaser to know what land is offered for sale. The bidder who will pay the tax for the smallest portion of the land will have his offer accepted. To decide this matter, there should be no uncertainty as to what land he is dealing with.'' Concerning the ruling in the Miller case the court in *Fox* v. *Townsend*, 152 Cal. 51, 58 [91 P. 1004, 1007], had this to say: ''The rule in *Miller* v. *Williams* in this regard—namely, that such a description [referring to a named tract but no map] is *prima facie* insufficient—has not been impaired by any later case, but has always been accepted as correct. Nor can it reasonably be said that the change in our revenue laws under which all property delinquent for taxes is sold to the state affords sufficient warrant for declaring a different rule from that laid down in *Miller* v. *Williams*. Such change eliminates some of the reasoning in support of the requirements of a certain description of the assessed property, for the purchaser who should know the exact location of the property offered for sale is no longer present, but the owner who is entitled to know with certainty what property is assessed to him still remains.''

▮ A description which names a subdivision but does not give a map reference is prima facie invalid (*McLauchlan* v. *Bonynge*, 15 Cal.App. 239, 242 [114 P. 798]; *Fox* v. *Townsend, supra,* 152 Cal. 51, 57). ▮ Within the rule that parol evidence may be received to identify the land by use of the deed description, it is proper to consider maps corresponding to the incomplete reference found in the deed. (*Best* v. *Wohlford, supra,* 144 Cal. 733, 737; *McLauchlan* v. *Bonynge, supra,* at page 240; *Fitzimons* v. *Atherton*, 162 Cal. 630, 632 [124 P. 250]; *Adams* v. *Slee*, 92 Cal.App. 708, 712 [268 P. 959].) ▮ If it is shown that there is but one such map, it becomes a part of the description as if written

in the deed. (*Best* v. *Wohlford, supra,* at 737.) But if there are more than one such maps—e.g., Santa Paula No. 20— their efficacy depends on whether they are identical with respect to the assessed property. If they are, the description is aided thereby (*Stewart* v. *Atkinson, supra,* 96 Cal.App 50, 54; *Baird* v. *Monroe,* 150 Cal. 560, 571 [89 P. 352]). But if they are not consistent with each other they cannot cure the deed description. (*Cadwalader* v. *Nash,* 73 Cal. 43, 45 [14 P. 385]; *Cordano* v. *Kelsey,* 28 Cal.App. 9, 14-19 [151 P 391, 398].) Likewise, a description that is equally applicable to two different parcels is fatally defective. (*Butterfield* v. *Union Hollywood W. Co.,* 39 Cal.App. 605, 607 [179 P. 524]; *Brandon* v. *Leddy,* 67 Cal. 43 [7 P. 33]; *Hall* v. *Bartlett,* 158 Cal. 638, 641-642 [112 P. 176].) Where the assessment or deed describes a portion of a lot or a fractional lot, without specifying which part thereof, the description is void for uncertainty. (*Stewart* v. *Atkinson, supra,* p. 55; *Sinai* v. *Mull, supra,* 80 Cal.App.2d 277, 279-280.)

The deed description is again quoted: "Lots 14 and 16, in Block 68-C, and Lots 20 and 22 to 31 inclusive, Block 68, as shown upon a Map recorded in the office of said County Recorder in Book 1 of Miscellaneous Records, page 234-5. being a portion of Lot 14, Block 68, City of Santa Paula, Map No. 20." Respondents' position that the false reference may be rejected is supported by authority. (*Bosworth* v. *Danzien,* 25 Cal. 296, 299-300; *Trezona* v. *Tickell,* 4 Cal. 2d 432, 433 [49 P.2d ·825]; *Jacoby* v. *Wolff,* 198 Cal. 667, 674 [247 P. 195].) With that correction the description is reduced to this: "Lots 20 and 22 to 31 inclusive, Block 68, as shown upon a Map . . . being a portion of Lot 14, Block 68, City of Santa Paula, Map No. 20." There is no identification of the map except by title, and the question is the same as if a tract had been mentioned by name without reference to any map. Proof of a map or maps corresponding to the language of the deed is proper, but they must be consistent to be helpful. (Cases *supra.*)

 It appears from oral evidence herein that the maps placed in evidence were in existence before the assessment of the taxes which resulted in the deed under consideration. One of them (Exhibit E and L) is of record in the county recorder's office. It is not only labelled Santa Paula No. 20, but is also designated as "Official Map of the City of Santa Paula." It shows a block 68 which is divided into 14 lots,

numbers 13 and 14 being each about 330 feet wide and approximately 1040 feet long. In 1927, after the surveyor's map, recorded in book 4, page 8 of maps in the recorder's office (the map used in the correct description), had been prepared, and presumably after it was recorded, the deputy county assessor carried onto the official map, Exhibit F, information shown on the surveyor's map concerning certain new lots which appear to be a subdivision of part of the original Lot 14, viz., Lots 20 to 31 inclusive. The result is that Exhibit F continues to carry the designation "14" which on the earlier map (Exhibit E and L) indicated the large Lot 14; it also has a new Lot 14, the dimensions of which are about 140 by 250 feet. Thus it appears that Exhibit F has, or appears to have, two lots numbered 14, and the description upon which respondent stands says that Lots 20 and 22 to 31 are "a portion of Lot 14, Block 68, City of Santa Paula, Map No. 20." Bearing in mind that the court may not indulge in presumptions or intendments in favor of the description, this map does not disclose which Lot 14 is referred to. If it be new Lot 14 it is impossible that 20 to 31 be a part of the same; if old Lot 14 is the reference it is clear that it has ceased to exist because all of its area is occupied by new lots. The area which would be the remainder of old Lot 14 after subtracting new Lots 20 to 31 now comprises new Lot numbers 14, 15, 16, 17, 17B, 18, 19 and 19B. To say that numbers 20 to 31 are parts of a nonexistent Lot 14 destroys the description. This Exhibit F does not square with the surveyor's map, Exhibit C, which has only one Lot 14 on it, and has courses and distances which Exhibit F lacks. Lot 14 on Exhibit C is so placed and of such size that Lots 20 to 31 could not possibly be parts of it. We have concluded that the description in the deed from the state to the city is fatally defective.

Respondent would avoid this conclusion through application of certain language of *Best* v. *Wohlford, supra,* 144 Cal. 733, 736: "Mr. Cooley (Taxation, p. 745) states as a satisfactory rule that 'the designation of the land will be sufficient if it afford the owner the means of identification and do not positively mislead him, or is not calculated to mislead him.' . . . A tax properly imposed upon his property will be upheld if the description of the property is sufficient to give him notice that it is burdened with the tax." Counsel argue that plaintiff has not been misled and that the record so shows.

The Edwards answer to the cross-complaint says: "[T]he

Cross-Complainant, City of Santa Paula, has for many years last past, and does now, describe said lands of Cross-Defendants upon the various assessment rolls of said City as being 'Lots 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30 and 31, Block 68 Subdivision of the City of Santa Paula.' . . . That said description of said lands of Cross-Defendants by said Cross-Complainant as aforesaid, is uncertain and insufficient for assessment purposes, in that such description was, and is now, insufficient to identify the property, and to give sufficient information to the Cross-Complaint [sic] and its predecessors in title as tax-payers of the property for which they were assessed. That Cross-Defendants are informed and believe and upon such information and belief, allege the facts to be that such designation upon the assessment rolls of the lands of Cross-Defendants and their predecessors in title by the Cross-Complainant was calculated to mislead the Cross-Defendants and their said predecessors; that such designation did in fact so mislead them." There was certainly no waiver of the insufficiency of the description in this pleading. The situation is analogous to that found in *McLauchlan* v. *Bonynge*, *supra*, 15 Cal.App. 239, 242, wherein it is said: "A great part of appellants' argument is devoted to the contention that throughout the record it appears that plaintiffs, by admissions both express and implied, conceded the property described in the complaint to be identical with that referred to in the tax proceedings. We perceive no merit in such contention. Whether it was the same property was the only point in controversy, and the solution of the question depended upon the sufficiency of the description in the tax proceedings, which, as we have seen, was *prima facie* invalid. The record discloses no admissions or concessions on the part of plaintiffs, either express or implied, which could be deemed a waiver of the proof conceded to be necessary in order to apply the description to the lots described in the complaint."

Mr. Edwards, after having identified his property by metes and bounds descriptions, testified: "Well, there is no question in my mind that the property claimed by the city, on which the city claims delinquent taxes is part of Block 68 included within the metes and bounds description;" also, that the metes and bounds descriptions cover and include the property presently in litigation. "Q. At that time you knew, did you not, and so testified, in general that the City of Santa Paula claimed some interest into some of that property by reason of delinquent taxes? A. Delinquent taxes,

yes. That was their claim there that arose from delinquent taxes. They had a tax lien against the property described in the metes and bounds description. Q. At that time from the metes and bounds description in that inventory could you determine which portion encompassed by that metes and bounds description were claimed by the City of Santa Paula for delinquent taxes? A. No.'' We perceive in this testimony no admission of the sufficiency of the tax deed description. We apprehend that the language above quoted from *Best* v. *Wohlford, supra,* 144 Cal. 733, furnishes an objective test only, for the court says at the beginning of the paragraph: ''The purposes to be subserved by the description are to enable the owner to discharge his land from the lien of the assessment by paying the same; and also, in case the land shall be sold to satisfy the lien, that bidders may know what land is offered for sale, and that the purchaser may receive a sufficient conveyance. The assessment becomes a lien only upon the land which is described in the assessment-book, and it is therefore essential that such description be sufficiently definite to inform the owner whether any of his land is burdened by the lien.'' (P. 736.) Our thought is expressed in *Felker* v. *Board of Com'rs of Paving Imp. Dist. No. 13,* 202 Ark. 304 [150 S.W.2d 55, 58] : ''The description must be such as 'will fully apprise the owner without recourse to his superior knowledge peculiar to him as owner, that the particular tract of land is sought to be charged with a tax lien. It must be such as will notify the public what lands are to be offered for sale in case the tax be not paid.' ''

We do not believe that the Supreme Court intended in the Best case, or any other which refers to the test of a misleading description, to say that actual knowledge acquired by the owner from sources other than the deed description can competently bridge over any hiatus therein. While the sufficiency of the description is ordinarily a question of fact (*Best* v. *Wohlford, supra,* 144 Cal. 733, 737) the state of the record at bar is such that we are required to hold as matter of law that the description in the deed just discussed is fatally deficient.

Respondent city also relies upon a tax deed from the city tax collector to the city, dated December 5, 1940, which describes the property as ''that certain real property in the City of Santa Paula, County of Ventura, State of California, more particularly described as follows, to wit:

Official Map # 20 ⅓ of Lot 14 Block 68 Including Parcels —20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31.'' The designation of ⅓ of Lot 14, without specifying what third, renders this description void for uncertainty (see authorities, *supra*). This description is also subject to most of the observations already made with respect to the deed from the state to the city.

When the city filed its cross-complaint it brought in, pursuant to court order, the State of California as a cross-defendant. The property described in the cross-complaint included Lot 21, which was not conveyed or attempted to be conveyed to the city in the deed from the state. With respect to that lot, the city relied upon another tax deed which was the subject of the third cause of action. The state answered, denying the city's title to Lot 21, asserted title in itself by virtue of the same tax deed which started the city's claim to Lots 20 and 22 to 31; it prayed that it be adjudged the owner of said Lot 21. Mr. Edwards and his wife, Mary G. Edwards (who had been brought into the case as a cross-defendant), answered the cross-complaint but that answer did not concern itself with count three because, pursuant to stipulation mentioned in the answer, all causes of action of the cross-complaint, except the first one, were dismissed prior to trial as to both Mr. and Mrs. Edwards. No issue was joined between the state and Edwards; neither of them filed any pleading seeking relief against the other. The court adjudged the state to be the owner of Lot 21; the city did not appeal. Edwards and wife purport to appeal from that portion of the judgment as well as those running in favor of the city. The state argues that it could not be sued without its consent and that the appeal with respect to Lot 21 should be dismissed for the further reason that no issue was joined between it and the appellants.

The plaintiff and the state did not in fact litigate between themselves the title to Lot 21. Originally they were cross-defendants; then plaintiffs were let out and the trial with respect to Lot 21 proceeded as a contest between the cross-complainant city and the cross-defendant state.

The judgment concerning that lot could not become res judicata in favor of the state and against the plaintiff. "It is . . . a general principle in the field of *res judicata* that parties to a judgment are not bound by it in a subsequent proceeding or controversy between them, unless they were adverse parties in the original action." (*Standard*

*Oil Co.* v. *J. P. Mills Organization,* 3 Cal.2d 128, 139 [43 P.2d 797].) "A further general rule is that a judgment operates as an estoppel among the parties only when they are adversary parties in the original action." (*City of San Diego* v. *California Water & Tel. Co.,* 71 Cal.App.2d 261. 276 [162 P.2d 684].) See also *County of Los Angeles* v. *Continental Corp.,* 113 Cal.App.2d 207, 222 [248 P.2d 157]; *Rousseau* v. *Hurtado,* 122 Cal.App.2d 705, 715 [265 P.2d 580]; 101 A.L.R. p. 105 Ann.; 142 A.L.R. p. 728 Ann.

As the judgment does not affect any interest that appellants may have in said Lot 21, they are not aggrieved parties entitled to appeal from that part of the judgment. (3 Cal.Jur.2d § 111, p. 568; *Rousseau* v. *Hurtado, supra.*)

The appeal is dismissed with respect to Lot 21 of the premises described in the cross-complaint, and the judgment is reversed as to Lots 20 and 22 to 31 inclusive.

Moore, P. J., and Fox, J., concurred.