Filed 3/17/16

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| CITY OF PALM SPRINGS, Plaintiff, Cross-defendant and Respondent, v. LUNA CREST INC., Defendant, Cross-complainant and Appellant. | E062654 (Super.Ct.No. PSC1404912) OPINION |


APPEAL from the Superior Court of Riverside County. John G. Evans, Judge. Affirmed.

Law Offices of James DeAguilera and James DeAguilera for Defendant, Cross-complainant and Appellant.

Woodruff, Spradlin & Smart, Jason M. McEwen and Vincent K. Wong for Plaintiff, Cross-defendant and Respondent.

Defendant, cross-complainant and appellant Luna Crest Inc. (Luna) opened a medical marijuana dispensary within the city limits of plaintiff, cross-defendant and respondent City of Palm Springs (City). The Palm Springs Municipal Code requires a

1

permit to operate a marijuana dispensary in the City, which Luna did not obtain. Luna contends that the City ordinance requiring a permit is preempted by federal law and, therefore, invalid and unenforceable. This appeal arises from the trial court's order denying Luna's motion for a preliminary injunction. We affirm.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

The material facts underlying this matter are straightforward and undisputed: Luna opened a medical marijuana dispensary in the City without obtaining the permit required under local law. Luna contends the law requiring it to obtain a permit is preempted by federal law, and therefore invalid and unenforceable, and opened its dispensary with the express purpose of provoking litigation to test that contention. The City obliged.

More specifically, chapter 5.35 of the Palm Springs Municipal Code[2] establishes a "Comprehensive Medical Cannabis Regulatory Program." Section 5.35.100 provides that "[n]o person shall engage in the business or activity of cultivating, possessing, selling, distributing, dispensing, or offering to sell, distribute, or dispense Medical Cannabis or Medical Cannabis Infused Product unless such person fully complies with the provisions of this Chapter, [and] has received any and all permits required in this Chapter . . . ."

---

[1] Also pending is Luna's request for judicial notice of a particular section of the Palm Springs Municipal Code. The request is unopposed and will be granted on that basis. Our disposition of this appeal, however, does not require discussion of the noticed code section.

[2] Except as otherwise indicated, further undesignated section references are to the Palm Springs Municipal Code.

Section 5.35.200 requires that "[p]rior to initiating operations and as a continuing requisite to conducting operations, the legal representative of the persons wishing to operate a [medical cannabis cooperative or collective] shall obtain and maintain a permit from the City Manager under the terms and conditions set forth in this Chapter." Section 5.35.120 previously set the maximum number of permitted "medical cannabis cooperatives and collectives" operating in the City at any time at four; Palm Springs Ordinance No. 1879, enacted June 17, 2015, modified section 5.35.120, raising that number to six. Luna did not obtain a permit before opening its dispensary, or at any other time.[3]

In addition to the permitting requirement, the City's medical marijuana laws authorize the city manager to "formulate, adopt, and amend from time to time, rules and regulations regarding the safety and potency of medical cannabis" that is distributed by dispensaries in the City. (§ 5.35.710, subd. (A).) The city manager is authorized to contract with one or more testing centers to assist in formulating those regulations, and to perform periodic and random testing of the products distributed at each dispensary operating in the City. (§ 5.35.710, subd. (B).)

The City brought suit in September 2014, seeking and obtaining a preliminary injunction against Luna's continued operation of the unpermitted dispensary.[4] Subsequently, in October 2014, Luna filed a cross-complaint, alleging that the provisions

---

[3] As best we can determine, Luna never applied for a permit from the City; nothing in the present record, at any rate, indicates otherwise.

[4] Luna's appeal of the trial court's order granting a preliminary injunction was dismissed by this court for failure to pay the required filing fee.

of the Palm Springs Municipal Code that regulate medical marijuana—and in particular, the provisions requiring a permit to operate a medical marijuana dispensary—are invalid and unenforceable, because they are preempted by federal law. Luna filed a motion seeking a preliminary injunction against continued enforcement of the City's permitting requirement. The trial court denied the motion.

## II. DISCUSSION

### A. Luna Does Not Lack Standing.

The City argues that Luna lacks standing to challenge the City's permit requirement. We disagree.

"'As a general principle, standing to invoke the judicial process requires an actual justiciable controversy as to which the complainant has a real interest in the ultimate adjudication because he or she has either suffered or is about to suffer an injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented to the adjudicator. [Citations.] To have standing, a party must be beneficially interested in the controversy; that is, he or she must have "some special interest to be served or some particular right to be preserved and protected over and above the interest held in common with the public at large." [Citation.] The party must be able to demonstrate that he or she has some such beneficial interest that is concrete and actual, and not conjectural or hypothetical.' [Citation.]" (*County of San Diego v. San Diego NORML* (2008) 165 Cal.App.4th 798, 814 (*County of San Diego*), italics omitted.)

4

There is nothing conjectural or hypothetical about the injury that Luna alleges it has suffered. Luna opened a medical marijuana dispensary and was forced to shut it down when the City brought suit and obtained an injunction enforcing the City's permit requirement. Luna contends the permit requirement is unlawful and unenforceable. Luna, therefore, "'"'"'personally has suffered [an] actual . . . injury as a result of the putatively illegal conduct of the [the City]'"'"'" and has standing to assert its challenge to the City's asserted legal basis for that conduct. (*County of San Diego*, *supra*, 165 Cal.App.4th at p. 814.) The proposition that Luna has no interest in the matter separate or different from the public at large, asserted by the City, is belied by the undisputed facts.

To be sure, as the City points out, there is a certain irony, if not hypocrisy, in Luna's invocation of federal drug laws as a basis for invalidating the City's permitting requirements, given Luna's intention to operate a medical marijuana dispensary in violation of those very federal drug laws. The City cites no authority, however, for the proposition that irony or hypocrisy alone may vitiate standing, and we are aware of none. We turn, therefore, to the merits of Luna's claims.

**B. The City's Permitting Requirements Are Not Preempted by Federal Law.**

Luna argues that the City's regulatory program for medical marijuana dispensaries is preempted by federal law, arguing that by not just decriminalizing, but affirmatively permitting the operation of medical marijuana dispensaries, the City violates federal drug laws. Applying the applicable de novo standard of review (*Spielholz v. Superior* Court (2001) 86 Cal.App.4th 1366, 1371), we reject Luna's arguments.

5

As an initial matter, we note that the primary authority cited in Luna's opening brief directly in support of its contentions regarding federal preemption is a California appellate opinion that is no longer published, because a petition for review was granted by the California Supreme Court, and the case was later dismissed without ordering republication. (*Pack v. Superior Court*, review granted Jan. 18, 2012, S197169, review dismissed by *Pack v. Superior Court*, 2012 Cal. LEXIS 8531 (Cal., Aug. 22, 2012).) The California Rules of Court, with exceptions not applicable here, provide that unpublished opinions of this state's courts of appeal "must not be cited or relied on by a court or a party in any other action." (Cal. Rules of Court, rule 8.1115; *McMahon v. City of Los Angeles* (2009) 172 Cal.App.4th 1324, 1336, fn. 10 [citation of appellate court opinion superseded after the Supreme Court granted review violates rule 8.1115].) "Appellant's counsel should know better. It goes without saying we have not considered such improper authority." (*People v. Wallace* (2009) 176 Cal.App.4th 1088, 1105, fn. 9.)

Turning now to the substance of Luna's claim of preemption, we find no merit in the assertion that City's permit requirement for medical marijuana dispensaries is preempted by federal law. Luna suggests that both "conflict preemption" and "obstacle preemption" principles require the conclusion that the City's permit requirement is preempted by federal law. "Conflict preemption exists when 'simultaneous compliance with both state and federal directives is impossible,'" creating a "positive conflict with federal law." (*Qualified Patients Assn. v. City of Anaheim*, 187 Cal.App.4th 734, 758-759 (*Qualified Patients*).) The city's permit requirement would be preempted under obstacle preemption principles if it "'"'stands as an obstacle to the accomplishment and

6

execution of the full purposes and objectives of Congress.'"""' (*Id.* at p. 760.)

"[O]bstacle preemption only applies if the state enactment undermines or conflicts with federal law to such an extent that its purposes '"cannot otherwise be accomplished . . . ."'"' (*Id.* at p. 761.)

With respect to conflict preemption, Luna has pointed to no specific provision of the City's regulation of medical marijuana dispensaries that is in "positive conflict" with federal drug laws, and indeed the City's permitting requirements do not require anything that the federal Controlled Substances Act forbids. (See *Qualified Patients*, *supra*, 187 Cal.App.4th at p. 759.) Luna asserts that the circumstance that the City affirmatively permits—rather than merely decriminalizing—medical marijuana dispensaries "violates the federal law." It emphasizes specifically the City's involvement not only in allowing a certain number of dispensaries to operate, but in overseeing their operation through regulations, including testing requirements regarding safety and potency of the marijuana and marijuana products being dispensed.[5] But in fact, the Controlled Substances Act "does not direct local governments to exercise their regulatory, licensing, zoning, or other power in any particular way," so exercise of those powers "with respect to the operation of medical marijuana dispensaries that meet state law requirements would not violate conflicting federal law ." (*Qualified Patients*, *supra*, at p. 759.) Moreover, with limited exceptions not relevant here, federal law confers immunity on any "duly authorized

---

[5] We note that at other points in its briefing, Luna apparently concedes the City's right to "regulate" medical marijuana dispensaries within city limits, while contesting only the City's right to require a permit for a medical marijuana dispensary to operate. We need not attempt to reconcile this apparent inconsistency.

officer of any State, territory, [or] political subdivision thereof, . . . who shall be lawfully engaged in the enforcement of any law or municipal ordinance relating to controlled substances." (21 U.S.C. § 885(d).) Luna's premise that the City's implementation of its permitting and testing requirements for medical marijuana dispensaries is in violation of federal law is therefore false.

Similarly, with respect to obstacle preemption, Luna articulates no persuasive reason why the City's regulatory program for medical marijuana should be considered to stand as an obstacle to the purposes and objectives of Congress. "Congress enacted the [Controlled Substances Act] to combat recreational drug abuse and curb drug trafficking." (*City of Garden Grove v. Superior Court* (2007) 157 Cal.App.4th 355, 383.) Nothing about the City's regulatory program for medical marijuana stands in the way of those purposes. (See *Qualified Patients*, *supra*, 187 Cal.App.4th at pp. 760-761 [rejecting argument that state medical marijuana laws are preempted under obstacle preemption].) To the contrary, common sense suggests that a strong local regulatory regime governing medical marijuana related conduct would tend to prevent the transformation of purported nonprofit medical marijuana dispensaries into "profiteering enterprises" that contribute to recreational drug abuse and drug trafficking.[6] (*Id.* at p. 760.)

---

[6] Apparently, at least the executive branch of the federal government agrees. An August 29, 2013 memorandum issued by the Department of Justice to all United States attorneys, which was submitted by the City for consideration by the trial court, provides guidance to the United States attorneys regarding enforcement of federal drug laws, in light of the decriminalization of marijuana in some states. The guidance offered "rests on [the Department of Justice's] expectation that states and local governments that have

*[footnote continued on next page]*

In short, we find that the City's regulatory program for medical marijuana dispensaries neither conflicts with federal law, nor stands as an obstacle to its purposes and objectives. As such, the trial court properly denied Luna's request for an injunction against its enforcement.

### III. DISPOSITION

The order appealed from is affirmed. The City is awarded its costs on appeal.

CERTIFIED FOR PUBLICATION

HOLLENHORST
J.

We concur:

RAMIREZ
P. J.

MILLER
J.

---

*[footnote continued from previous page]*
enacted laws authorizing marijuana-related conduct will implement strong and effective regulatory and enforcement systems" to ensure that those laws "do not undermine federal enforcement priorities."